ISRAEL HUMPHRIES & *ux.* *versus* SAMUEL PARKER.

It is not objectionable for a witness, when testifying, to say, it is " *his impression*," or " he thinks," that the facts, concerning which he is testifying, were as he states them, when he means by the former expression that he has an *indistinct remembrance*, and, by the latter, that he *recollects*.

Under what circumstances the presiding Judge may be called upon to exclude the answer of a witness which is susceptible of two meanings, one admissible, and the other not.

Humphries *v.* Parker.

The question of probable cause, in an action for malicious prosecution, is a mixed proposition of law and fact.

What constitutes probable cause.

What constitutes reasonable grounds.

Malice necessary in an action for malicious prosecution.

In a case for slander, it is proper for the presiding Judge to instruct the jury, that, in the assessment of damages, they may take into consideration the wealth of the defendant.

Under what circumstances a verdict of $1400, in actions for malicious prosecution and slander, is not excessive.

ON MOTION and EXCEPTIONS from *Nisi Prius*, KENT, J., presiding.

CASE for malicious prosecution and slander.

The facts sufficiently appear in the opinion of the Court. Verdict for the plaintiffs for $1400.

*Coburn & Wyman*, in favor of the exceptions.

*John S. Abbott, contra.*

The opinion of the Court was drawn by

WALTON, J.— In examining and deciding upon a bill of exceptions, we must act upon the presumption that it presents the rulings of the presiding Judge correctly. And yet, every one knows, that they are prepared and allowed under circumstances not very well calculated to secure accuracy. They are drawn in the first instance by the losing party, and it is for his interest to make it appear that the presiding Judge has committed some error. The other party interferes and endeavors to have the exceptions so amended as to exclude all appearance of error. They are presented to the Judge after a considerable lapse of time,— usually at the very close of the term, when there is a crowd of other business pressing upon him, — and he is obliged to examine and correct them without much time for consideration. The corrections are usually made by erasing, interlining, making marks for transposition, or wafering on slips of paper, and it is not surprising that exceptions do not al-

ways present the rulings of the Judge in the most favorable light.

The exceptions in this case do not present the rulings of the presiding Judge in a very clear and intelligible form, and, at the time of the argument in the law court, we were impressed with the belief that the exceptions would have to be sustained. But a more full and careful examination satisfies us that they contain nothing of which the defendant can justly complain.

1. The first point taken in the argument of the defendant's counsel is that illegal testimony was admitted. It is a very common practice for witnesses, when testifying from recollection, to use the expressions "it is my *impression*," "I *think*," &c. One of the witnesses (Philander Coburn) used these expressions while testifying in this case; and it is to these answers that the defendant's counsel refers when he says that illegal testimony was admitted. Such answers are not objectionable. One of Webster's definitions of the word *impression* is as follows: — "Slight, indistinct remembrance. I have an *impression* that the fact was stated to me, but I cannot clearly recollect it." Webster says that one of the meanings of the word *think* is "to recollect, or call to mind. We have no doubt the witness used these terms in the sense here given, and, if so, his answers were unobjectionable. (16 Maine, 246.) When the answer of a witness is susceptible of two meanings, one of which would render it admissible and the other not, before asking the Judge to exclude it, the witness should be required to explain his meaning, and, if the explanation is such as to render the answer inadmissible, then, and not before, the Judge may rightfully be called upon to exclude it.

2. The defendant complains that the question of probable cause was left to the jury, when it should have been decided by the Court; and that the instruction as to what constitutes probable cause was erroneous. The question of probable cause is a mixed proposition of law and fact. Whether the circumstances alleged to show it probable are true and ex

isted, is a matter of fact for the jury. But whether, supposing them true, they amount to probable cause, is a question of law for the Court. The exceptions fail to satisfy us that anything more was left to the jury in this case than legitimately belonged to them. Nor are we able to discover any error in the instructions of the presiding Judge as to what constitutes probable cause. He told the jury that there is a want of probable cause, when a party institutes a prosecution without reasonable grounds for believing the party guilty. This was undoubtedly correct. He then defined reasonable grounds to be such as would warrant an impartial and candid mind, exercising ordinary care, caution and discrimination, in believing a party guilty. This we think was correct. He then told the jury that probable cause did not always depend upon the real and exact facts, but might depend upon the honest belief of the party prosecuting, but that it must be a belief honestly entertained, and derived from facts and evidence which in themselves were sufficient to justify a man who was calm, and not governed by passion, prejudice or want of ordinary caution and care, in believing the party guilty. This, also, we think correct. There is no doubt that actual belief, and reasonable grounds for that belief, are essential to constitute probable cause. However strong the evidence might be, yet, if the party prosecuting did not believe the party was guilty, *he* would not be justified in prosecuting him. Nor is mere *belief* enough; for, if this were so, the Court would never be required to judge of the sufficiency of the grounds for that belief, as the law now requires them to do. Belief, and reasonable grounds for that belief, are undoubtedly both essential elements in the justification of probable cause. We see nothing to disapprove of in the instructions of the presiding Judge, bearing upon the question of probable cause. They seem to be in accordance with the best and most approved authorities.

Either party, upon request, would have been entitled to a direct and specific instruction from the presiding Judge,

as to whether the alleged facts set up in defence, if proved, did or did not show want of probable cause; but no such request seems to have been made, and the omission, therefore, to give more specific instructions, furnishes no valid cause for exception.

3. The exceptions state that, "on the question of malice in the prosecution, the presiding Judge instructed the jury that there is a distinction between *legal malice and actual or express malice;* that legal malice means a wrongful act done intentionally, without sufficient cause or excuse; that it is not necessary to render an act legally malicious, that the party doing it is actuated by a feeling of ill-will or hatred; that, if the jury should find that the prosecution was commenced without probable cause, as before explained, *they were at liberty to infer malice, so far as proof of malice was required to sustain the action;* that express malice is something beyond this, and is shown by evidence of personal hatred, desire and determination to injure another, and other facts showing expressly active malice toward the other party; that this being shown, may enhance the damages beyond what may be given when only *legal malice* is shown."

The defendant contends that the term *legal malice* has a well established meaning, and is used to distinguish *constructive malice* from *actual malice,* or, in other words, *malice in law* from *malice in fact;* that, to support an action for malicious prosecution, malice in fact as distinguished from malice in law, must be proved; that, by using the term *legal malice,* the presiding Judge gave the jury to understand that malice in law is sufficient to maintain such an action, and that the only effect of malice in fact is to enhance the damages.

There is no doubt that malice in fact, as distinguished from malice in law, is essential to the maintenance of an action for malicious prosecution. Actions of slander are sometimes maintainable without proof of *actual* malice, *constructive* malice being sufficient. The reason for the distinction is this: Slander is always against public policy, and very rarely, if ever, springs from other than malicious motives;

Humphries *v.* Parker.

but the prosecution of alleged criminals is not against public policy, and it is only occasionally that such a prosecution is commenced without probable cause. Hence, in actions of slander, the falsity of the charge being shown, *malice* is established by a legal presumption, and proof of *actual* malice is not required; but, in actions for malicious prosecution, the law allows of no such presumption, and requires proof of *actual malice to sustain them.* Actual malice may be inferred by the jury from the want of probable cause, or be proved by other circumstantial evidence, like any other fact; but it is a fact to be found by the jury, and not a fact to be established by a legal presumption.

It is true, as stated by the defendant's counsel, that the term "legal malice" has been used heretofore to distinguish malice in law from malice in fact, (36 Maine, 484; 7 Pick., 87;) and, if the first and concluding sentences of the charge upon this point stood alone, we should feel constrained to say that it gave the jury to understand that malice in law was alone sufficient to maintain the action, and that malice in fact would have no other effect than to enhance the damages, and the exceptions would have to be sustained. But these sentences do not stand alone; and the context shows that the presiding Judge did not use the term *legal malice* as synonymous with malice in law; that he used it to distinguish malice in its enlarged legal sense, from malice in its more restricted popular sense; and we think the whole charge, taken together, must have given the jury unmistakably to understand that malice in fact was essential to the maintenance of the action for malicious prosecution, and was therefore unexceptionable.

4. On the question of damages, the presiding Judge instructed the jury, among other things, that they might take into consideration the wealth of the defendant; and this the defendant contends is erroneous, or at least calculated to mislead the jury; but we think the instruction was right. This is an action for slander as well as for malicious prosecution; and in actions of slander we regard the law as well

settled that the defendant's wealth, as an element which goes to make up his rank and influence in society, and therefore his power to injure the plaintiff by his speech, is a fact not to be overlooked by the jury in estimating the damages, and that their attention may therefore be properly called to it by the Court.

5. In addition to the exceptions, the defendant moves that the verdict be set aside and a new trial granted, because, as he says, the verdict is against evidence or the weight of evidence; because the damages are grossly excessive; and because the charge of the presiding Judge, where it was not positively erroneous, was calculated to mislead the jury.

We cannot sustain this motion. The defendant charged the female plaintiff with the crime of larceny, — a charge that cannot be made without seriously wounding one's feelings and character. He commenced a criminal prosecution against her, and had her arrested for the same offence, and the evidence discloses the fact that he persisted in the prosecution after being advised by able and learned counsel to desist. We cannot doubt that the prosecution was commenced without probable cause and for unjustifiable motives; and we are not prepared to say that the damages are too high. The result will probably make the defendant wiser for the future, and have a good influence upon others who are tempted to gratify feelings of revenge at the expense of female character.

Some other points raised by the exceptions have been passed over in silence by the defendant's counsel, and will be no further noticed by us than to say that we have carefully examined them, and find nothing in them which in our judgment ought to disturb the verdict.

*Exceptions and motion overruled.*

*Judgment on the verdict.*

APPLETON, C. J., DAVIS, KENT and DICKERSON, JJ., concurred.